**IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY; CIT EQUIPMENT FINANCING, LLC<br><br>Plaintiffs,<br><br>v.<br><br>BALLAST PARTNERS, LLC<br><br>Defendant. | ) | Case No.<br><br>Honorable ___________ |

## COMPLAINT

Plaintiffs, First-Citizens Bank & Trust Company ("FCB") and CIT Equipment Financing, LLC ("CIT") (together, "Plaintiffs"), by and through their attorneys at Ice Miller LLP, for their Complaint against Ballast Partners, LLC ("Ballast" or "Defendant"), state as follows:

### NATURE OF THE ACTION

1. Plaintiffs leased railcars to Ballast pursuant to certain railcar lease agreements. Plaintiffs bring this action to recover their railcars and collect unpaid amounts from Ballast. As of the filing of this Complaint, Ballast is improperly retaining possession of twenty-two (22) of Plaintiffs' railcars (the "Outstanding Cars"). Further, Ballast owes FCB at least $1,494,075.78 in unpaid invoices for rental fees and other charges, as well as late payment interest, attorneys' fees, and costs.

### PARTIES

2. Plaintiff First-Citizens Bank & Trust Company (referred to elsewhere in this Complaint as "FCB") is a North Carolina state-chartered bank headquartered in Raleigh, North Carolina. Accordingly, for purposes of diversity jurisdiction, FCB is a citizen of North Carolina.

3. FCB is the successor in interest to CIT Bank, N.A. pursuant to a January 2022 merger.

4. Plaintiff CIT Equipment Financing, LLC (referred to elsewhere in this Complaint as "CIT") is a Delaware limited liability company. CIT is a wholly-owned subsidiary of FCB. Accordingly, for purposes of diversity jurisdiction, CIT is a citizen of North Carolina.

5. CIT is the successor in interest to The CIT Group/Equipment Financing, Inc. ("CITEF") as a result of CITEF's December 2023 conversion from a corporation to a limited liability company. Prior to December 2023, CITEF was the successor in interest to CIT Railcar Funding Company, LLC pursuant to an August 2022 merger.

6. Defendant Ballast Partners LLC (referred to elsewhere in this Complaint as "Ballast" or "Defendant") is a Texas limited liability company. Upon information and belief, Defendant is not a citizen of North Carolina. The most recent publicly available information indicates that the sole member of Ballast is an individual named Aaron C. Webster, who upon information and belief is a citizen of Texas. *See* Texas Franchise Tax Public Information Report, attached herewith as **Exhibit 1**. Definitive information regarding Defendant's citizenship is uniquely within the knowledge of Defendant.

7. Defendant Ballast is in the business of marketing refined fuel products, like gasoline and diesel. One way that Ballast transports refined fuel products is by railroad in tank cars such as those leased from Plaintiffs.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this matter involves claims between citizens of different states where the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over Defendant Ballast because Ballast waived any objection to this Court's personal jurisdiction when it agreed to the forum/venue selection clause in Section 15.M of the Master Railcar Lease dated May 7, 2021, as amended (the "Master Lease"), attached herewith as **Exhibit 2-A**. The Master Lease was agreed to by Plaintiffs' predecessors in interest and Ballast and includes a clause that designates the federal and state courts located in the County and City of New York, State of New York, as the proper forums for any action related to the Master Lease. *Id.*

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) because Defendant Ballast "resides" in the Southern District of New York given that Ballast is subject to personal jurisdiction in this District. Additionally, Ballast has waived any objection it may have to the laying of venue in the City of New York, State of New York. Ex. 2-A, § 15.M.

## FACTUAL ALLEGATIONS

### A. The Contractual Provisions of the Leases Govern the Parties' Relationship.

11. Ballast, as lessee, and Plaintiffs, as lessors, are parties to the Master Lease. Ex. 2-A. In the Master Lease, Ballast agreed to lease tank cars (the "Cars") from Plaintiffs pursuant to certain Schedules to be entered into by the parties. Ex. 2-A, § 1.A.

12. Plaintiffs and Ballast are parties to four Schedules—two between CIT and Ballast: Schedule No. 02 dated May 7, 2021, as amended (BALP01002), and Schedule No. 03 dated May 7, 2021, as amended (BALP01003); and two between FCB and Ballast: Schedule No. 01 dated May 7, 2021, as amended (BALP01001); and Schedule No. 04 dated October 4, 2024 (BALP01004) (collectively, the "Schedules," and together with the Master Lease to the extent incorporated into the Schedules, the "Leases"). The Master Lease, Schedule Nos. 01, 02, 03, and

04, and amendments thereto, are attached herewith as **Group Exhibit 2**, numbered Exhibit 2-A through Exhibit 2-J, respectively.

13. Each Schedule incorporates the terms and conditions of the Master Lease to the extent the Master Lease does not conflict with the Schedule. *E.g.*, Ex. 2-B, § 1.

14. Pursuant to the Leases, Plaintiffs agreed to lease Cars to Ballast. The Cars under Schedule Nos. 01, 02, and 03 are described as "30,000 gallon, non-coiled, insulated LR tank cars." Ex. 2-B, § 2; Ex. 2-E, § 2; Ex. 2-H, § 2. The Cars under Schedule No. 04 are described as "29,000 gallon, exterior-coiled, insulated CPCR tank cars." Ex. 2-J, § 2. Ballast uses the Cars to transport refined fuel products to its customers.

15. Ballast was required to pay Plaintiffs "rent as set forth on each Schedule[.]" Ex. 2-A, § 3.A. Ballast agreed that overdue rent and other amounts payable under the Schedules would incur interest "at a rate equal to one and a half percent (1.5%) per month or the maximum rate permitted by law, whichever is less." *Id*. at § 3.B.

16. Ballast was also required not to "directly or indirectly, encumber or dispose of any Car or any part of any Car or permit any lien or encumbrance to be entered or levied upon any Car or this Agreement or any Schedule[.]" *Id*. at § 10.B.

17. The Leases provide that Ballast must preserve all Cars "in good condition." *Id*. at § 10.A.

18. Ballast agreed that its responsibilities to repair Cars included "items specified in the applicable Schedule ('Lessee Maintenance Items')" and Ballast was required to "maintain all Lessee Maintenance Items in good condition and repair, including renewal necessitated by repair to other portions of the Car." *Id*. at § 4.A(i).

19. Section 7 of each Schedule provides the following additional detail regarding

Lessee's Maintenance Items for the Cars: "Notwithstanding anything to the contrary contained herein, Lessee shall, at its expense, perform in a timely manner Maintenance for (i) gaskets and o-rings, (ii) loading and unloading valves and devices, (iii) tank car fittings (including service equipment and tank car closures), (iv) and removable parts of the items listed in clauses (i) through (iii) hereof." Ex. 2-B, § 7; Ex. 2-E, § 7; Ex. 2-H, § 7; Ex. 2-J, § 7.

20. "Maintenance," as used in the Leases, means "all repairs, servicing, maintenance, replacement or furnishing of parts, mechanisms and devices as are needed to keep any Car in good condition and working order and repair, suitable for loading of the commodities listed in the applicable Schedule and in accordance with the Interchange Rules, the [Federal Railroad Administration] rules and the applicable rules of any other applicable regulatory body having jurisdiction over the Cars." Ex. 2-A, Rider A.

21. The Leases also reflect the parties' understanding that "Lessee Maintenance Items shall include (a) damage to the Car while in Lessee's or Lessee's shipper or consignee's possession, custody or control, and (b) any corrosion damage to the Car." Ex. 2-A, § 4.A(ii).

22. Under the Leases, "If [Ballast] fails to pay when due any rent or other amount required to be paid under this Agreement and/or any Schedule(s) or to perform any of its other obligations under this Agreement and/or any Schedule(s) . . . then [Plaintiffs] may exercise any one or more of the following remedies and any additional rights and remedies permitted by law (none of which shall be exclusive) and shall be entitled to recover all [their] costs and expenses including attorneys' fees in enforcing [their] rights and remedies:

A. Terminate the applicable Schedule and/or this Agreement and recover damages; and/or

B. Proceed by any lawful means to enforce performance by [Ballast] of this Agreement and/or the applicable Schedule; and/or

C. By notice in writing to [Ballast], terminate [Ballast's] right to possession and use of some or all of the Cars . . . thereupon [Ballast] shall at its expense promptly return such Cars to Lessor at such place as Lessor shall designate and in the condition required as provided in Section 12 of this Agreement; . . .; and/or

D. Proceed to recover from [Ballast] any and all amounts which under the terms of this Agreement and/or any Schedule(s) may be then due or which may have accrued to the date of termination and also to recover forthwith from [Ballast] (a) . . . the then present value of all rent for such Car which would otherwise have accrued hereunder from the date of such termination to the end of the term of the Lease as to such Car, . . .; and/or

. . ."

*Id*., § 11.

23. Ballast is required under the Leases to return to Plaintiffs, at Ballast's sole expense, any Car upon the early termination of the lease for that Car. *Id*., § 12.A.

24. Ballast also agreed that it would return all Cars to Plaintiffs "(i) in interchange condition in accordance with Interchange Rules and [Federal Railroad Administration] rules and regulations in effect on the date the Cars are returned to [Plaintiffs] and free of AAR Interchange Rule 95 damage; (ii) clean and free from all accumulations or deposits from commodities transported in or on it while in the service of [Ballast]; (iii) suitable for loading the commodities allowed in the applicable Schedule; (iv) in as good condition, order and repair as when delivered to Lessee." *Id*., § 12.B. In addition, Ballast agreed to "remove[] all existing company logos of [Ballast], and [] comply with the return related provisions of each applicable Section of each Schedule." *Id*.

25. Plaintiffs have the right to "inspect any Car which is returned to [them] in accordance with Section 12A" and invoice Ballast for any "Maintenance or cleaning for which [Ballast] is responsible." *Id*., § 12.C. Ballast agreed to pay such invoices within thirty (30) days of receipt. *Id*.

26. The Leases are governed by the laws of the State of New York without regard to New York's choice of law doctrine. *Id*., § 15.M.

**B. Ballast Has Failed to Pay Amounts Owed and Return Cars Leased Under the Leases.**

27. Pursuant to the Leases, Ballast agreed to lease from Plaintiffs a total of one hundred fifty-seven (157) Cars, consisting of: (i) twenty (20) Cars under Schedule No. 01, as amended ("BALP01001 Cars"); (ii) eighty-two (82) Cars under Schedule No. 02, as amended ("BALP01002 Cars"); (iii) sixteen (16) Cars under Schedule No. 03, as amended ("BALP01003 Cars"); and (iv) thirty-nine (39) Cars under Schedule No. 04 ("BALP01004 Cars").

28. Ballast accepted delivery of all Cars described in the Leases in accordance with the terms of the Leases.

29. Plaintiffs sent monthly invoices to Ballast for the rent and maintenance rebills owed for the Cars under the Leases.

30. For years, Ballast paid the invoices Plaintiffs sent for rent and maintenance due and owing.

31. Beginning in fall 2025, Ballast fell behind on its lease payments for the Cars under the Leases. Through the present, Ballast has failed to pay certain invoices issued pursuant to the Leases (the "Outstanding Invoices"). Due to the voluminous nature of the Outstanding Invoices, Plaintiffs do not attach the Outstanding Invoices hereto. The Outstanding Invoices have previously been provided to Ballast and will be made available again upon request.

32. On November 13, 2025, Plaintiffs issued a Default Notice (the "First Default Notice"), attached herewith as **Exhibit 3**. The First Default Notice informed Ballast that it is in default under the Leases in the payment of rent and other charges. Ex. 3 at 1. The First Default Notice demanded that Ballast pay the outstanding amounts plus applicable interest by November

21, 2025. *Id*.

33. On December 15, 2025, Plaintiffs and Ballast executed a Partial Lease Termination Settlement Agreement (the "Partial Termination"), attached herewith as **Exhibit 4**. The Partial Termination sought to partially terminate the Leases with respect to one hundred (100) of the Cars as identified in the Partial Termination (the "Terminating Cars"). The applicable Leases were to be partially terminated upon the return of the Terminating Cars to Plaintiffs in accordance with the Partial Termination. Ex. 4, § 4. Pursuant to the Partial Termination, Ballast was required to return each of these Terminating Cars to Plaintiffs in Texas on or before January 15, 2026. Ex. 4, § 3. Of the twenty-two (22) total Outstanding Cars, eight (8) are Terminating Cars from the Partial Termination.

34. On February 9, 2026, Plaintiffs issued another Default Notice (the "Second Default Notice"), attached herewith as **Exhibit 5**. The Second Default Notice again informed Ballast that it is in default under the Leases in the payment of rent and other charges, and also that it failed to return ten (10) of the Terminating Cars to Plaintiffs in accordance with the Partial Termination. Ex. 5 at 1. The Second Default Notice demanded that Ballast pay the outstanding amounts plus applicable interest and arrange for return of the ten (10) remaining Terminating Cars by February 19, 2026. *Id.* at 1-2.

35. On April 14, 2026, Plaintiffs issued a Termination Notice, attached herewith as **Exhibit 6**, which terminated the Leases. Plaintiffs instructed Ballast to return all Cars under the Leases. Ex. 6 at 1. Additionally, Plaintiffs demanded that Ballast pay the Outstanding Invoices plus accelerated rent for the remaining rent payable to Plaintiffs through the expiration date of the Schedules ("Accelerated Rent"). *Id.* at 1-2.

36. On August 4, 2026, after a series of unsuccessful attempts to achieve the return of

the Outstanding Cars and the payment of the Outstanding Invoices by Ballast, Plaintiffs sent Ballast a final notice requiring the return of the twenty-two (22) Outstanding Cars and the payment of the Outstanding Invoices no later than August 31, 2026 (the "Final Notice"). A copy of this communication is attached herewith as **Exhibit 7**.

37. Ballast has not made any payments to Plaintiffs since the Termination Notice was issued.

38. Further, Ballast has failed to return the twenty-two (22) Outstanding Cars that are under the terminated Leases—eight (8) of which are subject to the Partial Termination, and the remaining fourteen (14) are subject to the April 14 Termination Notice.

39. Moreover, on information and belief, Ballast impermissibly subleased forty (40) Cars to Central Indiana Ethanol, LLC ("CIE"), without Plaintiffs' approval, in contravention of the Master Lease. *See* Ex. 2-A, § 10.C. Ballast failed to remit payments owed to Plaintiffs despite collecting and keeping rent paid to Ballast by CIE as a result of these impermissible subleases.

### C. Plaintiffs Have Demanded That Ballast Make Overdue Payments and Return Cars.

40. On multiple occasions, Plaintiffs demanded that Ballast pay Plaintiffs all past due amounts and return Cars under the terminated Leases.

41. As noted above, on November 13, 2025, Plaintiffs duly served Ballast with the aforementioned Default Notice. Ex. 3. The Default Notice included a then-current copy of Plaintiffs' ledger detailing a statement of account of the Outstanding Invoices through November 1, 2025. *Id*. Ballast did not object to the statement of account through November 1, 2025.

42. On February 9, 2026, Plaintiffs duly served Ballast with the aforementioned Second Default Notice. Ex. 5. The Second Default Notice, likewise, included a then-current copy of Plaintiffs' ledger detailing a statement of account of the Outstanding Invoices through February 1,

2026. *Id*. Ballast again did not object to this statement of account through February 1, 2026.

43. On April 14, 2026, Plaintiffs duly served Ballast with the aforementioned Termination Notice. Ex. 6. In the Termination Notice, Plaintiffs demanded that Ballast return all Cars in the condition specified in the Leases, pay Plaintiffs all past due amounts, and pay Plaintiffs the Accelerated Rent. *Id*. The Termination Notice also included a then-current copy of FCB's ledger detailing a statement of account of the Outstanding Invoices through May 1, 2026.[1] *Id*. Ballast did not object to the statement of account as of April 14, 2026.

44. On August 4, 2026, Plaintiffs notified Ballast that it has thus far failed to comply with any of Plaintiffs' demands in the Termination Notice, which were issued pursuant to the terms of the Leases. Ex. 7. Plaintiffs reiterated their demands that Ballast immediately return all Outstanding Cars and make payments of all amounts owed under the Leases. *Id*.

45. On August 25, 2026, Ballast responded to Plaintiffs' August 4, 2026, communication and admitted "Ballast has been in financial default under the Leases for some time." It also informed Plaintiffs that Ballast "will not be able to perform under the Lease[s] and cannot make further payments under the Leases." A true and accurate copy of this communication is attached hereto as **Exhibit 8**. Ballast further noted that, "Ballast cannot pay to deliver the [Cars] to [Plaintiffs]." Ex. 8 at 1.

46. A true and correct copy of Plaintiffs' current ledger detailing a statement of account of the Outstanding Invoices through September 1, 2026, is attached hereto as **Exhibit 9**.

**D. Plaintiffs Have Been Damaged and Continue to Suffer Damages.**

47. As a direct and proximate result of Ballast's conduct, Plaintiffs have already

[1] This statement included maintenance rebills owed by Ballast for work performed on the Cars pursuant to the Leases which were to become, and did ultimately become due and owing on May 1, 2026.

incurred, and continue to incur, substantial damages.

48. At the time of filing this Complaint, the Outstanding Invoices amount to $1,494,075.78. This amount does not include late payment interest, which is also owed in accordance with the Leases.

49. In total, under the Leases, Ballast has failed to return twenty-two (22) Cars to Plaintiffs. Plaintiffs are sustaining lost profits because they are not able to lease these Cars to other customers.

50. Ballast must return all Cars in the condition specified in Section 12 of the Master Lease and Section 12 of the applicable Schedule, or Ballast may incur maintenance charges pursuant to Section 12.C of the Master Lease.

51. The Leases provide several remedies in the event that Ballast fails to make payments when due or fails to perform any of its other obligations under the Leases. Ex. 2-A, § 11.

52. Plaintiffs are entitled to recover "all [their] costs and expenses including attorneys' fees in enforcing [their] rights and remedies." *Id*.

53. The Leases also state that "[Plaintiffs'] failure to exercise or delay in exercising any right, power or remedy available to [Plaintiffs] shall not constitute a waiver or otherwise affect or impair [their] rights to the future exercise of any such right, power or remedy." *Id*.

## COUNT I – BREACH OF CONTRACT DAMAGES

54. Plaintiffs incorporate the preceding paragraphs by reference as though fully restated herein.

55. Plaintiffs and Ballast entered into the Leases, which are valid and enforceable contracts.

56. Ballast has materially breached the terms, covenants, promises, and provisions of the Leases by various acts and omissions, including, without limitation, the following:

A. Failing to pay the Outstanding Invoices.

B. Using and failing to return certain Cars past the respective dates by which such Cars were required to be returned to Plaintiff.

C. Failing to preserve Cars in good condition.

D. Failing to perform Maintenance for Lessee Maintenance Items.

E. Subleasing forty (40) Cars without Plaintiffs' prior consent.

57. The Leases provide that when the foregoing material breaches have occurred, Plaintiffs are entitled to terminate the applicable Lease and recover damages, Ex. 2-A, § 11.A, and/or enforce performance by Ballast of the Leases, Ex. 2-A, § 11.B.

58. Plaintiffs have fully performed their contractual obligations to Ballast and satisfied all conditions precedent, if any, to Plaintiffs' right to recover under the Leases.

59. As a direct and proximate result of Ballast's material breaches of the Leases, Plaintiffs have been damaged in an amount to be proven at trial, and continue to suffer ongoing damages.

WHEREFORE, Plaintiffs seek a judgment in Plaintiffs' favor and against Defendant Ballast in an amount to be determined at trial, as well as Plaintiffs' attorneys' fees and costs, to the extent they are allowable by law or by contract.

## COUNT II – ACCOUNT STATED
## DAMAGES

60. Plaintiffs incorporate the preceding paragraphs by reference as though fully restated herein.

61. Defendant Ballast has leased Plaintiffs' Cars for which Ballast has been billed

monthly.

62. Ballast currently owes Plaintiffs for the amounts in the Outstanding Invoices plus late payment interest in accordance with the Leases.

63. There is an account stated for the amounts billed to Ballast. *See* Exs. 3, 5, 6.

64. On November 13, 2025, Ballast received a statement of account that was current as of that date. As of the filing of this Complaint, Ballast has not objected to that statement of account. Similarly, on April 14, 2026, Ballast received a statement of account that was current as of that date. As of the filing of this Complaint, Ballast has not objected to that statement of account either.

65. Plaintiffs have demanded payment of the amounts owed but Ballast has failed and refused to pay.

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment in favor of Plaintiffs and against Ballast in the amount of all Outstanding Invoices totaling $1,494,075.78, for amounts due and owing through the time of this Complaint, plus additional unpaid invoices which may yet accrue until the date of judgment, plus late payment interest in accordance with the Leases, and award Plaintiffs their costs and attorneys' fees, to the extent they are allowable by law or by contract.

## COUNT III – BREACH OF CONTRACT
## INJUNCTIVE RELIEF

66. Plaintiffs incorporate the preceding paragraphs by reference as though fully restated herein.

67. Plaintiffs and Ballast entered into the Leases, which are valid and enforceable contracts.

68. Ballast is currently in material breach of the terms, covenants, promises, and provisions of the Leases by using and failing to return certain Cars despite the termination of the

Leases.

69. The Leases provide that when the foregoing material breaches have occurred, Plaintiffs are entitled to enforce performance by Ballast of the Leases. Ex. 2-A, § 11.B.

70. Plaintiffs have no adequate remedy at law for Ballast's ongoing material breaches.

71. Plaintiffs have fully performed their contractual obligations to Ballast and satisfied all conditions precedent, if any, to Plaintiffs' right to recover under the Leases.

72. If Ballast's material breaches of the Leases are not enjoined and Ballast is not required to return the Cars to Plaintiffs, then Plaintiffs will be irreparably injured.

73. As a direct and proximate result of Ballast's material breaches of the Leases, Plaintiffs have been damaged in an amount to be proven at trial, and continue to suffer ongoing damages.

WHEREFORE, Plaintiffs seek an order enjoining Defendant from further possession and use of the Cars, requiring Defendant to return all Cars under the Leases to Plaintiffs in a manner compliant with the provisions of the Leases, as well as awarding Plaintiffs' their attorneys' fees and costs, to the extent they are allowable by law or by contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor:

a. Ordering Defendant to (i) stop using all Cars under the Leases; and (ii) return all Cars under the Leases to Plaintiffs in a manner compliant with the provisions of the Leases;

b. Awarding Plaintiffs damages, in an amount to be determined at trial, as permitted by equity and law, resulting from Defendant's conduct;

c. Awarding Plaintiffs prejudgment interest and post-judgment interest;

d. Awarding Plaintiffs recovery of all costs, attorneys' fees and other expenses associated with this lawsuit, as permitted by equity and law; and

e. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Date: September 1, 2026

Respectfully submitted,

**PLAINTIFFS FIRST-CITIZENS BANK & TRUST COMPANY, AND CIT EQUIPMENT FINANCING, LLC**

By: /s/ *Jessa DeGroote*
One of Their Attorneys

Jessa I. DeGroote (JD0720)
Nicholas A. Casto (*pro hac vice* forthcoming)
Alexander S. Valdes (*pro hac vice* forthcoming)
ICE MILLER LLP
1500 Broadway
29th Floor
New York, NY 10036
212-824-4975
jessa.degroote@icemiller.com
nicholas.casto@icemiller.com
alex.valdes@icemiller.com

*Counsel for Plaintiffs*